If any law clerks wish to sit up front where they can watch the fray from closer, they're invited to do so. Or anyone else. I feel elevated for the plaintiffs in this matter. All right. You may proceed if you're ready. The district court dismisses the case on 11th Amendment grounds because the court said that if a statute treats an individual state employee as the employer, the real party in interest is the state itself. And the case should be dismissed on 11th Amendment grounds. This view is rejected in significant part by all that the Maine West Supreme Court says. Sovereign immunity bars suits against states but not lesser entities, although some suits against state officers are barred by the rule that sovereign immunity is not limited to suits which name the state as a party. If the suits are, in fact, against the state, the real interest is served by the 11th Amendment not to be sacrificed to elementary mechanics of captures and pleadings. However, the rule of sovereign immunity does not bar certain actions against state officers for injunctive relief. And the Supreme Court says it ought to prevent even a suit for money damages may be prosecuted against the state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself so long as the relief sought is not from the state treasury but from the officer personally. And the Ninth Circuit has said that indemnification by the state, if there is a state indemnification statute in California, does not make a suit against an officer in an 11th Amendment case. Moreover, the fact that a state may choose to indemnify the officer does not extend the 11th Amendment protection to the individual state officer. In Ashcroft v. California Department of Corrections, the Ninth Circuit said that it had characterized the indemnity arrangement between a state officer and the state of California as a purely intramural arrangement that should not turn into an extension of sovereign immunity and held that a state should not be able to extend sovereign immunity to state officials merely by enacting a law assuming those officials' debts. Because plaintiff's suit against defendants in this case is a personal capacity suit, that is, a suit against defendants in their individual capacity, the 11th Amendment does not bar it. The Judiciary Court also found that plaintiffs were not employers under the FLCA because it found that the state maintained all control over the payment of plaintiffs' salaries. Plaintiffs contend that defendants are employers and are not immune from suit under the 11th Amendment because plaintiffs' defendants actually did control the purse strings and because it is not necessary under the FLCA to have actual control of the purse strings to be an employer under the FLCA and the alternative defendants meet the other FLCA employer criteria. The Judiciary Court, relying on different fact patterns in different cases, found that the defendants were not employers under the FLCA because it found that the state maintains all control over payment of plaintiffs' salaries. The Judiciary Court stated that none of these defendants controlled the purse strings that support plaintiffs' jobs, citing Burnett in the 9th Circuit, 7-0-4-F-2-1470, finding that power over the plaintiffs' employment relationship, the virtue of control over the purse strings is a substantial factor in identifying an employer-employee-employer relationship. In this instance, the Judiciary Court asserts that the state maintains all control. That's stated in the Judiciary Court's opinion on pages 10 and 14 through 20. Actually, the Judiciary Court makes control of the purse strings a necessary and sufficient basis to find that an employee is an employer under the FLCA. This view narrows the definition that Congress intended to put on the term employer for the purposes of the FLCA. Plaintiffs contend that the controllers simply issued overtime checks promptly after CDC sent the amounts to be paid. The state's documents alleged that the department requesting overtime sets the date on which it will be paid by the controller by the date it is submitted to the controller. The defendant, Kessler, as the CDC Deputy Director, Administrative Services Division, had overall responsibility for the amount of time it took to calculate the overtime pay to plaintiffs and to cause the state controllers to issue overtime checks or electronic deposits. Although Kessler's office received its overtime amounts from each of the three transportation hubs within three or four days after the end of the state pay period, the calculation was made very complicated by CDC's unilateral decision to combine the overtime calculations with the obsolete but still required by CDC excess time calculation. This is discussed in the declaration of Dave Lewis in the excerpts, pages 154 through 175. Excess time is something that results from the fact that CDC employees do not work only a Monday through Friday schedule, and so may have more or less than 21 days or the 22 days in the state pay period. The overtime for the work period ending December 24th, January 24th, 1999 was not paid until February 15th, or even by the agreed-upon extension of 10 days to February 25th at the beginning of the 7K period. It was, in fact, paid on March 2nd, some five days beyond the extended deadline. The overtime paid for the 28-day period ending March 21st, 1999 was not paid until May 4th, 1999, or some 20 days after it was due by the contracted deadline of April 15th. This is the 10-day extension for getting an overtime check expired on May 1st. CDC's own documents assure you the delay to the CDC personnel branch, not to the controller or the state, not having any money as it did in the 1992 budget deficit crisis, budget crisis. Ultimately, dependents are employees of the FSA and not immune from suit under the 11th Amendment because assuming arguments that they did not control purse strings, they were acting directly or indirectly in the interest of an employer in relation to an employee It is not necessary for the FSA to have actual control over the purse strings to be an employer of the FSA, and dependents would meet the other criteria for being an employer of the FSA. The District Court, relying on the fact found in a different case, Pigsby-Wilson, found that dependents were not employers under the FSA because it found that the state maintained all control over the plate of salaries. The FSA defines an employer as including any person acting directly or indirectly in the interest of an employer in relation to an employee, and includes a public agency, because it does not include any labor organization other than one acting as an employer or anyone acting in the capacity of officer or agent of such labor organization. By this test, each of the individual dependents is an employer under the FSA because they are persons acting directly or indirectly in the interest of a public agency in relation to an employee. The District Court, however, found that none of these dependents controlled the purse strings, and finding that the power of an employment relationship by virtue of the control of the purse strings is a substantial factor in identifying an employee-employee relationship. But in this instance, the District Court asserts that the state maintains all control. District Court Memorandum and Opinion, page 10, lines 11-14-20. The District Court makes control of the purse strings, but the necessary and sufficient basis to find that an employee is an employer under the FSA. This narrows the definition Congress intended to put on the term employer for purposes of the FSA. Alternatively, dependents are employers of the FSA and not immune from suit under the 11th Amendment because, assuming our judgment that the state did not control the purse strings, they were acting directly or indirectly in the interest of an employer in relation to an employee. The District Court in this case stated further that even if the Court were to find that dependents were employers of the FSA, the case should be dismissed on the grounds of sovereign immunity because the state is a real part of the interest. The reason for the District Court finding that the state is a real part of the interest is because of the identification statute, I guess. Or because the District Court says that the plaintiffs are simply trying to obey the 11th Amendment restriction   in the State and Federal Courts. The plaintiff's defendants did not meet the front-page requirement under FSA and the regulations thereunder. Defendants argue that the amount of fill-out eventually was resolved downward to about 14 days or less from the date of the state ending the state pay period. This assertion is not consistent with the factual record. Stimulating facts show that defendants delayed not only exceeded the temporary relief of 10 days extra passed the 15th of the month following the state pay period, but CDC's 11th Amendment period deadline stated in 29 CFR 778.106 that in no event may payment of overtime be delayed beyond the next payday after such computation can be made. Mr. Levinson, you've made your points very clearly both here and in your brief. Why don't we hear from the other side and then we'll give you a chance to respond.  Thank you, Your Honor. I just wanted to say also that I appreciate the court giving me an extended time for me to recover from my accident in order for me to be here today. Thank you. You're welcome. Thank you. If it please the court, Eben K. Brell, Labor Relations Counsel with the Department of Personnel Administration on behalf of the individually named defendants in this case. I'd like you, frankly, to place yourself in their shoes if you could. I think this is pretty borne out by the record, the immense stipulations of fact that we had this in this case and the decisions of Judge Shub. You're a middle manager for the state of California. You may be the director of corrections, but you're still in the middle management situation. You have done your job, as Judge Shub indicated. You have put into effect a payroll system that contemplates what was agreed to by the parties as best you can. Nobody has asked you to change the state's payroll system that existed for 70 years and had 12 pay periods. The entire state controller's system in place. Nobody has asked you to alter anything. When problems come to your attention of there being some delayed payments under the collective bargaining agreement because it did provide at one point for a 15-day at the end of the month overtime time for payment and it was extended to the 25th, when you find that out, you try to do what is humanly possible to alleviate the problem and you find out you have a budget crisis and you cannot hire personnel. You find that some of your own payroll techniques, given this new system, this new 28-day work period that has never existed in the state before, are too cumbersome to be able to meet the collective bargaining agreement provisions for timely payment. That's what these people found themselves in. And frankly, as Judge Shub found and I urge and thoroughly agree, the California Correctional Peace Officers Association sought an end run around the 11th Amendment in order to avoid what the U.S. Supreme Court had determined, which is that you cannot sue the state any longer as an employee for the Fair Labor Standards Act violations. Only the Department of Labor can do that. Now, much has been made in this case of the people that are these mid-level managers not seeking any legal expert opinion or advice from the Department of Labor or anybody else to find out what standing they had with respect to the FLSA and whether it was an obvious violation. That's true. I contend that they had no reason to do so. The Department of Labor's regulation simply says that when you have overtime to be paid, it is to be paid. Does this make them more or less an employer? Is that where you're going with this argument? I'm sorry, Your Honor. It sounds like the issues we have are whether or not these people could be classified as an employer and whether, in any event, this is really a claim against the state and therefore the 11th Amendment applies. And there's a third element, which is even if they are considered to be employers, did they in fact violate the FLSA in the failure to pay overtime? It pretty well goes through with that. Right. I think your opponent was talking about that simply because they didn't control the purse strings, that doesn't mean they weren't employers. What do you have to say to that? I have to say to that that you have to look at the Bonet decision itself, with which I'm familiar because I've had to represent in-home service, Department of Social Services in subsequent times. It's a distinguishable case. In Bonet, these are people that actually help people who have been taken out of hospitals and put into their own homes in the past. They're low-income wage earners, and the county really pays their salary. But what the court found was, the Ninth Circuit, was that the state is a co-employer because the determination of the circumstances under which they would be paid is made by the state. What about the 11th Amendment, the identity of these people? The district court said that there really is nothing more than a suit against the state. I agree with that. The thing is about Bonet, to just continue with Bonet, the distinguishable here is that this was a situation where these individuals could set the pay. The pay was set under the collective bargaining agreement by setting the amount against which 1.5 times would be paid the overtime pay. These people were not people who controlled the pay system itself. All they could do was provide an input to the pay system at the state controller's office. What about the 11th Amendment issue? Well, that's just it. These individuals are not the state per se. The state is really the defendant in this action. That's what Judge Shub found. Everybody really wanted $800,000, is the aggregated claim in this matter. It has been looked upon as being as much as $3.8 million. Could they be seen as agents of the state? Beg your pardon? Could they be seen as agents of the state? They could be seen as agents of the state. But would they have a right to act for the state then? They would have the right to act. And they're clothed with that authority. They're clothed with that authority. And they're claiming that these payments were laid after an agreement was made. An agreement between the state employer, not them. The state employer is the governor under the California government code. It is the governor through its designated representative, which happens to be the Department of Personnel Administration, to enter into agreements on behalf of employees. These people had nothing to do with that. Could you bring a big case nowadays? Yes. How? Well, there has, and as a matter of fact, there was one. Well, an individual, you could bring it under Ex parte Young. You could bring it under a theory that you want declaratory relief, injunctive relief as to a state official violating federal law. An actual payment case, I don't think you could. You would have to have the Department of Labor come in with you. Now, that's notable in this case, too. These individuals never got a hold of the Department of Labor. But this became a Board of Control claim. And the person that handles on the Fair Labor Standards Act matters for CDC did go to the Department of Labor. And while she didn't describe the entire factual scenario here, she got an opinion from the Department of Labor that this was not a late pay case. Ninth Circuit didn't seem to care a bit in Biggs that it was hard to come up with money. Well, one judge did. No, he didn't. And it's getting even more so now. Do you have anything else you'd like to do? I don't believe so. The case has been well briefed. Mr. Levinson, do you have anything you'd like to respond, or would you submit it on the briefs? Submit it on the briefs. All right. Thank you very much, both. The case just argued is ordered submitted. Thank you.
judges: Judges Weiner, Thompson, Trott